Adam Wolf (SBN 215914)
Email: awolf@peiffer.com
Peiffer Wolf Carr Kane Conway & Wise
3435 Wilshire Blvd., Suite 1400
Los Angeles, CA 90010
Telephone: 415.766.3545
Facsimile: 415-840-9435

Jonathan E. Levitt (admitted PHV)
Email: jlevitt@frierlevitt.com
Michelle L. Greenberg (admitted PHV)
Email: mgreenberg@frierlevitt.com
Dae Y. Lee (admitted PHV)
Email: dlee@frierlevitt.com
Frier Levitt, LLC
84 Bloomfield Avenue
Pine Brook, New Jersey 07052
Telephone: 973.618.1660
Facsimile: 973.618.0650

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.P. AND Y.Z.,<br><br>Plaintiff,<br><br>vs.<br><br>CHA HEALTH SYSTEMS, INC., COMPREHENSIVE HEALTH FOR ALL, FERTILITY MEDICAL GROUP, INC., D/B/A CHA FERTILITY CENTER LOS ANGELES, CHA FERTILITY CENTER LOS ANGELES, JOSHUA J. BERGER, M.D. AND SIMON HONG, PH.D.,<br><br>Defendant. | Case No.: 2:23-CV-01621-FLA-KES<br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS COMPREHENSIVE HEALTH FOR ALL FERTILITY MEDICAL GROUP, INC., AND SIMON HONG, PH.D'S MOTION TO DISMISS PORTIONS OF THE COMPLAINT**<br>HEARING DATE: OCTOBER 20, 2023<br>HEARING TIME: 1:30 P.M.<br>TRIAL DATE: None Set<br>ACTION FILED: 07/12/19 (NY)<br>Assigned to Hon. Fernando L. Aenlle-Rocha, Courtroom 6B, for all purposes including trial |

**TABLE OF CONTENTS** **Page**

I. INTRODUCTION AND FACTUAL BACKGROUND…………………………6

II. STANDARD ON A MOTION TO DISMISS UNDER FRCP 12(B)…………...6

III. NEW YORK LAW SHOULD APPLY BASED ON CHOICE OF LAW ANALYSIS ………………………………………………………………..…6

IV. PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CAUSES OF ACTION……………………………………………………………………..10

a. Count Four: Intention Infliction of Emotional Distress………………..11

b. Count Five: Reckless and Wanton Misconduct………….....................14

c. Count Six: Breach of Contract…………………………………….....16

d. Count Seven: Breach of The Duty of Good Faith and Fair Dealing………..................................................................................19

e. Count Eight: Breach of Fiduciary Duty……………………………..19

f. Count Nine: New York Deceptive Trade Practices Act………………...20

g. Count Thirteen: Bailment………………………………………………21

h. Count Fourteen: Battery……………………………………………..…23

i. Count Fifteen: Conversion……………………………………...…25

j. Count Ten: Misrepresentation; Count Sixteen: Deceit and Fraudulent Concealment……………………………………………………………...27

IV. CONCLUSION……………………………………………………………..30

# TABLE OF AUTHORITIES

## Cases


Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000) .......... 12

Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009) .......... 10

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) .......... 10

Branzell v. Cal. Cryobank, LLC, 480 F. Supp. 3d 1080, 1089 (C.D. Cal. 2020) .......... 26

Cahill v. Liberty Mutual Ins., Co., 80 F.3d 335, 337-8 (9th Cir. 1996) .......... 10

California Logistics, Inc., v. State, 161 Cal. App.4th 242, 247 (2008) .......... 10

Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593 (1979) .......... 16

Chapman v. Skype, Inc., 220 Cal.App. 217, 230-1 (2013)) .......... 32

Christensen v. Superior Court, 54. Cal. 3d 868, 903-4 (1991) .......... 16

Cisco Sys., Inc., v. STMicroelectronics, Inc., 77 F.Supp. 3d 887, 897 (N.D. Cal. 2014) .......... 32

Cobbs v. Grant, 8 Cal. 3d 229, 239 (1972) .......... 27

Cochran v. Cochran, 65 Cal.App.4th 488 (1998) .......... 17

Constr. Protective Servs., Inc., v. TIG Specialty Ins. Co., 29 Cal 4th 189, 199 (2002) .......... 21

Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979) .......... 23

Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 976-7 (1997) .......... 33

Fletcher v. Western Life Insurance Co., 10 Cal. App. 3d 376, 397 (1970) .......... 16

FT Travel—New York, LLC v. Your Travel Ctr., Inc., 112 F. Supp. 3d 1063, 1073-4 (C.D. Cal. 2015) .......... 10

Galusha v. Fraser, 178 Cal 652 (1918) .......... 22

GemCap Lending I, LLC v. Quarles & Brady, LLP, 787 F. App'x 369 (9th Cir. 2019) .......... 31

GemCap Lending, LLC v. Quarles & Brady, LLP, 269 F.Supp. 3d 1007, 1039 .......... 31

Gold v. Gibbons, 178 Cal. App. 2d 517, 519 (Ct. App. 1960) .......... 22

Greenberg Brothers, Inc., v. Ernest W. Hahn, Inc., 246 Cal. App. 2d 529, 531 (1966) .......... 25

Hecht v. Superior Court (1993) 16 Cal. App. 4th 836, 846 n.4, 850 .......... 26

Hecht, 16 Cal. App. 4th at p. 846 fn.4 .......... 27

In re Yagman, 796 F.2d 1165, 1170 (9th Cir. 1986) .......... 11

Inland Mediation Bd. V. City of Pomona, 158 F.Supp 2d 1120, 1157 (C.D. Cal. 2001) ....16

Jameson v. Desta, 215 Cal. App. 4th 1144 (2013)....24

Jones v. ConocoPhillips Co., 198 Cal App. 4th 1187, 1198-1200 (2011) ....33

Kaplan v Mamelak, 162 Cal. App. 4th 637 (2008)....28

Kaplan v Mamelak, 162 Cal. App. 4th 637, 647 (2008)....29

Luera v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 75 (2013)....23

McGhee v. Arabian American Oil Co., 871 F.2d 1412, 1422 (9th Cir. 1989)....13

Miles, 236 Cal. App. 4th at 402 ....21, 23

Moore v. Regents of University of California, 51 Cal.3d 120 (1990) ....25

Moore, 51 Cal 3d. at 137 ....26

Muldoon v. Tropitone Furniture Co., 1 F.3d 964, 967 (9th Cir. 1993)....11

Ochoa v. Superior Court, 39 Cal.3d 159 (1985) ....17

Otworth v. Southern Pacific Transportation Co., 166 Cal. App.3d 452, 459 (1985)....20

Robertson v. Saadat (2020) 48 Cal. App. 5th 630, 645 ....27

San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co, 723 F.2d 700 (9th Cir. 1984)....23

Saxena v. Goffney, 159 Cal. App. 4th 316, 324 (2008)....27

See Benasra v. Marciano, 92 Cal. App. 4th 987, 991 (2001)....22

See Miles, 236 Cal. App. 4th at 402 (2015)....23

SpineCare Medical Group, Inc., 52 Cal. App. 4th 1285, 1313 (1997)....27

Stevens v. Superior Court, 180 Cal. App. 3d 605, 610 ....34

Stevens v. Superior Court, 75 Cal.App.4th 594, 601....11

Vogelsang v. Wolpert, 227 Cal. App. 2d 102, 111 (1964) ....33

Voris v. Lampert, 7 Cal.5th 1141, 1150 (2019)....30

Voris v. Lampert, 7 Cal.5th at 1158 (2019)....30

Witkin, Summary of Cal. Law § 810 at p.1115 (11th ed. 2017) ....30

## Statutes

Cal. Penal Code § 243 ....16

**Rules**

Fed. R. Civ. P. 8(a)(2) ....................10

Fed. R. Civ. P. 8(d)(3) ....................10

**Treatises**

5 Witkin, Summary of Cal. Law § 810 at p.1115 (11th ed. 2017)....................26

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs' Complaint arises from Comprehensive Health for All Fertility Medical Group, Inc., and Simon Hong, M.D.'s ("Defendants") breach of contract and the ultimate violation of patient trust, resulting in a sustained invasion of bodily autonomy, as well as medical and professional negligence, battery, conversion, unfair trade practices, and fraudulent concealment, among others. Plaintiffs A.P. and Y.Z. are a married couple living in New York. See Compl., ¶ 46. For nearly five years Plaintiffs attempted to conceive a child, unsuccessfully. Id. at ¶ 47. In 2017, they learned about Defendants and the various success with in-vitro fertilization ("IVF") advertised, promoted, and marketed to the public. Id. at ¶ 50. Plaintiffs reviewed substantial information including Defendants' websites, advertisements, representations, and even Defendants' claim that it is "known as the 'mecca of reproductive medicine' with world-class treatments for infertility." Id. at ¶¶ 51-3. In making the difficult decision to pursue fertility treatment in California, 3,000 miles away from their home in New York, Plaintiffs consulted with, and were persuaded by Defendants that they could rely on Defendants for world-class fertility treatments and could remain in New York for the treatment, pregnancy and delivery. Id. at ¶¶ 46, 79-83.

Plaintiffs entered into an IVF service contract with Defendants on January 9, 2018 Id. at ¶ 86. Y.Z. provided sperm and A.P. underwent the egg retrieval process and the eggs were fertilized using Y.Z.'s sperm, ultimately creating five viable embryos (four male and one female) for later use in helping A.P. to become pregnant with children of their own. Id. at ¶¶ 86, 88-91. Over the course of several months, A.P. continued following IVF protocol prescribed by Defendants and conducted in New York to prepare her body for embryo transfer and the potential pregnancy that could result. Id. at ¶¶ 93-94. A.P. underwent the first transfer but it did not result in pregnancy. Id. at ¶¶ 95-96.

Plaintiffs directed Defendants to thaw two of their female embryos for a second IVF transfer attempt. Id. at ¶¶ 95-98. These procedures were performed by or at the direction of Dr. Hong, the head embryologist and director of CHA Fertility's lab. Id. at ¶ 92. According to public records filed by CHA Health, Dr. Hong was an employee of CHA Health. See Request for Judicial Notice. Likewise Dr. Hong was identified as CHA Fertility's Lab Director on CHA Fertility's website. See Request for Judicial Notice.

On August 20, 2018, A.P. underwent a second attempt to transfer two embryos, and approximately one month later, A.P. learned she was pregnant with twins. Id. at ¶¶ 99-100. Plaintiffs later learned that A.P. was carrying twin boys. During a telephone call, Drs. Hong and Berger assured Plaintiffs that the ultrasound

results were not accurate and even provided an anecdotal story in an intentional attempt to persuade Plaintiffs about the inaccuracy of ultrasounds. See Compl., ¶ 103-8. Despite being told that two separate ultrasounds conducted two months apart identified that A.P. was carrying two male fetuses, Defendants intentionally stated that the two separate ultrasound (and by implication, the technician conducting the ultrasound) conducted at the three and five-month stages of pregnancy incorrectly identified **both** fetuses **each** time. Id. Because there has been no discovery (other than jurisdictional) at this stage of the case, it is currently unknown what, if any actions Defendants took internally upon Plaintiffs notifying them that A.P. was carrying two male fetuses - any actions taken at that time are relevant and probative of Defendants' state of mind.

In what should have been the happiest moment of Plaintiffs' lives, happiness quickly gave way to severe emotional distress after A.P. gave birth via caesarean section to twin boys who were not of Asian descent. Id. at ¶ 109. On or about April 2, 2019, Executives of Defendants CHA Fertility (Yumie Lee) and CHA Health (Young Suk Kim), and Dr. Hong traveled to New York to meet Plaintiffs while they were still in the hospital. Id. at ¶ 112. DNA testing confirmed what Plaintiffs already knew – the children that A.P. nurtured, loved, carried for nine months, and gave birth to were not related to her or her husband. Id. at ¶ 116. Incredibly, DNA testing further confirmed that the babies were also not related to each other. Id. at

¶ 117. Unbeknownst to Plaintiffs at the time, Defendants internally identified two couples who had been receiving treatment at the same time as Plaintiffs and attempted to match the infants to Couple A and Couple B. After a court intervention, the infants were taken from Plaintiffs and given to their genetic parents. Id. at ¶¶ 119-121. A.P. essentially served as an unintended and involuntary surrogate to Couple A and Couple B and was stripped of her intended and expected motherhood.

Defendants investigation and knowledge remains shrouded in secrecy. Plaintiffs are without concrete answers concerning the collection, labeling, storage, thawing, and transfer of the incorrect embryos because Defendants have attempted and are currently attempting to fraudulently conceal any wrongdoing to categorize its own intentional or otherwise reckless conduct as merely negligent. Plaintiffs' requests to identify the location of their remaining embryos numerous times, Defendants have not provided any answer. Further, Defendants' Motion to Dismiss relies on a number of incorrect factual and legal conclusions that do not warrant dismissal of Plaintiffs' claims. Taking the factual allegations in the Complaint as true, Plaintiffs have established plausible and meritorious causes of action and therefore, Defendants' Motion to Dismiss should be denied in its entirety.

## II. STANDARD ON A MOTION TO DISMISS UNDER FRCP 12(B).

A complaint is merely required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2). Moreover, pleading rules permit a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). To satisfy this requirement, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiffs "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009). "The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party." *FT Travel—New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1073-4 (C.D. Cal. 2015) (citing *Cahill v. Liberty Mutual Ins., Co.*, 80 F.3d 335, 337-8 (9th Cir. 1996). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555-6.

Generally, and to the extent that Defendants cite the standards raised on a demurrer for the Court, a court will "assume[s] the truth of the allegations in the complaint." *California Logistics, Inc., v. State*, 161 Cal. App.4th 242, 247 (2008).

Thus, "[f]or the purpose of determining the effect of a complaint, its allegations are liberally construed, with a view toward substantial justice." *Stevens v. Superior Court*, 75 Cal.App.4th 594, 601.

## III. NEW YORK LAW SHOULD APPLY BASED ON CHOICE OF LAW ANALYSIS.

Plaintiffs do not concede that California law applies to this dispute. Rather, Plaintiffs assert that New York law applies to this dispute. Defendants make a single conclusory allegation that California law applies, without any consideration of the governmental interests between both New York and California. However, since Defendants' Motion cites exclusively California law, Plaintiffs likewise cite California law for the sole purpose of opposing Defendants' Motion. Defendants further rely on the New York District Court order transferring this matter, however, the New York District Court's "characterization of the transfer is not controlling." *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir. 1993). Generally, courts apply the choice-of-law rules of the transferee district. Id. California courts use a "governmental interests" analysis. *In re Yagman,* 796 F.2d 1165, 1170 (9th Cir. 1986).

California's governmental interest analysis requires that:

> [T]he court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant

> transaction. Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. […] if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied."

*Abogados v. AT&T, Inc.,* 223 F.3d 932, 934 (9th Cir. 2000) (internal citations omitted).

Here, Plaintiffs are and were at all times during the parties' relationship residents of New York. Defendants CHA Health, CHA Fertility, and Dr. Hong operate within California, but Defendants promoted and marketed their services extensively in the stream of interstate commerce. See Compl., ¶¶ 52-70. Through Defendants extensive efforts aimed at obtaining patients outside of California, Defendants marketing reached Plaintiffs in New York who ultimately incurred more than $100,000 in expenses, much of which was paid directly to Defendants for the IVF treatment and related expenses. See Compl., ¶¶ 54; 84. As further evidence of Defendants' campaign, Defendants even offered concierge services

such as booking flights, local transportation, and other accommodations aimed exclusively at obtaining patients located outside of California. Id. at ¶ 55. The concierge services increased Defendants' value and appeal outside of California and exclusively targeted patients like Plaintiffs who sought specialized reproductive medicine from a Korean organization that was the "mecca of reproductive medicine." Id. at ¶¶ 52-53 Defendants' interactive website also allowed for patients to complete and submit new patient forms and schedule consultations while in the comfort of their own home. Id.

Defendants rely on California law which differs substantively from New York in an attempt to deprive Plaintiffs of their rights under New York law, as well as New York's interest in protecting its own citizens against foreign actors that create and market services towards New York residents. Having established that more than one jurisdiction maintains a legitimate interest, California courts focus on the comparative impairment of the interested jurisdiction, and must apply the law of the state whose interest would be more impaired if its law were not applied. *McGhee v. Arabian American Oil Co.,* 871 F.2d 1412, 1422 (9th Cir. 1989).

Defendants admit that "New York certainly would have an interest in protecting its residents..." (ECF No. 17) CHA Health Systems Letter dated September 20, 2019. New York has a substantial interest in the provision of any kind of goods or services directed at the residents located within the state, most

especially sensitive medical services like fertility counseling. Defendants were also clearly aware that Plaintiffs were citizens of New York, and continually collaborated with A.P.'s physician in New York, as well as sent prescriptions and physician orders to labs located in New York. See Compl., ¶ 94. In fact, Defendants issued over fifteen orders to Plaintiff's physician and laboratories located within New York. Id. Further, upon learning that A.P. had given birth in New York to two male infants that did not belong to her, Plaintiffs contacted Dr. Berger and Dr. Hong. Id. at ¶ 111. Plaintiffs' contact resulted in Dr. Hong, CHA Fertility's Chief Operating Officer Yumi Lee, and CHA Health's Chief Executive Officer Young Suk Kim travelling to New York to meet with Plaintiffs. Id. at ¶ 112. Defendants had genetic testing kits were sent to Plaintiffs in New York and Plaintiffs ultimately learned the results of the tests while in New York. Id.

Given that Defendants had continued and sustained marketing and promotion aimed at New York, the acts and omissions, and the substantial portion of events occurred within New York, New York has a more substantial interest in protecting its citizens than California does. Moreover, New York's interests in the protection if its own citizens would be more impaired than California's interest in protecting Defendants that recklessly stored, maintained, thawed, transferred, and ultimately lost the embryos of Plaintiffs. Accordingly, New York law, not California law, should be applied to this dispute.

## IV. PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CAUSES OF ACTION

Plaintiffs have sufficiently pled their causes of action against Defendants on Counts 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, and 16 arising out of Defendants' actions, taken over the course of the contractual relationship and IVF treatment. Plaintiffs seek damages relating to Defendants' intentional, reckless, and/or negligent acts that resulted in Defendants improperly impregnating A.P. with the wrong embryos and losing Plaintiffs' remaining embryos. Defendants' actions are the direct cause of Plaintiffs' damages as alleged in the Complaint.

Defendants contend that Counts 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, and 16 should be dismissed because they are not sufficiently pleaded. However, Defendants' arguments misconstrue relevant law and facts. Plaintiffs' complaint sets forth detailed facts that are plausible to sustain the causes of action. Accordingly, for the reasons set forth below, Defendants' Motion should be denied.

### a. Count Four: Intention Infliction of Emotional Distress.

Count 4 alleging Defendants' Intentional Infliction of Emotional Distress should not be dismissed because Plaintiffs have stated a claim upon which relief can be granted. The elements of a prima facie case for the tort of intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of

causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 579, 593 (1979), overturned on other grounds by statute, Cal. Penal Code § 243. "Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable man [or woman] in a civilized society should be expected to endure it." *Fletcher v. Western Life Insurance Co*., 10 Cal. App. 3d 376, 397 (1970). Generally, "[t]he law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." *Christensen v. Superior Court,* 54. Cal. 3d 868, 903-4 (1991). However, California courts have identified an exception to that rule "when the defendant is aware, but acts with reckless disregard of, the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff." Id. Put another way, "[a] plaintiff seeking to recover for intentional infliction of emotional distress may also demonstrate that the defendant acted with reckless disregard of the probability of causing severe emotional distress." *Inland Mediation Bd. V. City of Pomona,* 158 F.Supp 2d 1120, 1157 (C.D. Cal. 2001)(internal quotations removed).

Here, Defendants' actions exemplify an extreme reckless disregard and the probability (if not certainty) that Defendants' conduct would cause severe

emotional distress. Defendants conducted the in-vitro fertilization procedure in a manner that resulted in transferring Couple A and Couple B's embryos into A.P. See Compl., ¶ 160. Under no set of circumstances should either embryo have come into contact with the other, or Plaintiff A.P. Moreover, absent a reckless disregard, there is no set of circumstances where the embryos of two different couples wind up being identified as the Plaintiffs. The fact that two separate embryos wound up being transferred into A.P. leads to the reasonable inference that Defendants were working on these three separate cases at the same time without proper procedures in place and/or disregard for those procedures. Doing so illustrates the reckless disregard of the probability that Defendants would incorrectly identify one or more embryos resulting in the severe emotional distress caused to Plaintiffs.

Defendants' reliance on *Cochran v. Cochran*, 65 Cal.App.4th 488 (1998) and *Ochoa v. Superior Court*, 39 Cal.3d 159 (1985) for the proposition that the conduct in this case does not constitute intentional infliction of emotional distress is misplaced. Defendants cannot liken the verbal threats in *Cochran* or the medical negligence in *Ochoa* to the instant case. Def. Mot., p. 10. Plaintiffs had spent six long years attempting to have children before seeking fertility counseling, only to become pregnant with and give birth to ***other peoples' children***. See Compl., ¶¶ 47; 100; 109. Then Plaintiffs were required to endure a legal fight in an attempt to keep the children that A.P. carried, to no avail. Id. at ¶ 121. Such conduct is simply

not comparable to *Cochran* or *Ochoa*, and no reasonable man or woman in a civilized society should be expected to endure that type of conduct.

Likewise, Defendants' statement to Plaintiffs that the ultrasound results were incorrect was made with intent to mislead and encourage Plaintiffs who **wanted** to believe that they were wrong and that Defendants had not acted with reckless disregard. Id. at ¶¶ 103-108. Nothing could be further from the truth. Instead, Defendants endeavored to conceal this conduct, and has caused Plaintiffs to suffer severe emotional distress which requires continued treatment for the physical and emotional injuries suffered. Id. at ¶ 123. The facts set forth in Plaintiffs' complaint set forth in sufficient detail the elements for this claim and accordingly, Defendants' Motion to Dismiss Count Four should be denied.

**b. Count Five: Reckless and Wanton Misconduct.**

Count Five alleging reckless and wanton misconduct should not be dismissed because the facts alleged are clear that Defendants engaged in said misconduct. Defendants admittedly appear to downplay their actions by citing to cases involving drunk drivers, stolen cars, and watersports in comparison to "[m]islabeling test tubes, or implanting the wrong embryos." Def. Mot. p. 13. In doing so, Defendants concede that their conduct was, at the very least, negligent. Id. However, Defendants' conduct as pled rises to the level of wanton and reckless misconduct. Based on the allegations in the complaint, this Court can draw a

reasonable inference and find plausible evidence that Defendants' business practices were reckless and wanton because they ultimately resulted in A.P. being impregnated with two other couples' children, while Plaintiffs' own embryos are currently missing and possibly used in the IVF transfer to Couple A and/or Couple B. The fact that Defendants have not come forth with any explanation further supports this cause of action and at the least the need to engage in discovery that would yield evidence to further support this cause of action.

Plaintiffs credibly allege that it was not merely negligent conduct that resulted in Defendants' actions, rather, it was the result of Defendants' reckless business practices that exhibited a deliberate disregard for the high possibility that embryos may be mixed together, that resulted in A.P. becoming pregnant with two babies that were not genetically related to her, her husband or each other. See Compl. ¶ 170. Drawing all reasonable inferences in Plaintiffs' favor, Defendants likely were working on Couple A, Couple B, and Plaintiffs' embryos at the same time without proper protocols in place to prevent this tragedy. This reckless conduct likely resulted in the embryos for Couple A and Couple B becoming commingled and labeled as Plaintiffs' embryos and ultimately used in the IVF transfer for A.P. Defendants' reckless and wanton conduct resulted in the loss of Plaintiffs' embryos, without any information of their whereabouts. Id. at ¶ 124-6. Accordingly, Defendants' Motion to Dismiss Count Five should be denied.

**c. Count Six: Breach of Contract**

Count Six should not be dismissed because Defendants have materially breached their contract with Plaintiffs. The basic elements of a breach of contract require proof of the following elements, "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Miles v. Deutsche Bank Nat'; Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015). Here, Plaintiffs have alleged the existence of a contract for IVF services with Defendants and Defendants would not be able to challenge it as they are Defendants own documents. See Compl., ¶¶42-3; 82-3. Further, Plaintiffs performed in accordance with their obligation under the contract to provide payment for IVF services while following the IVF Protocol. Id. At ¶¶ 83-4; 93-94. Defendants subsequently breached their obligation to Plaintiffs when Defendants loaded the syringe with the wrong embryos that were used in the IVF transfer, resulting in A.P.'s pregnancy with two babies who were not biologically related to Plaintiffs or each other. Id. at ¶¶109-110.

In support of their Motion to Dismiss, Defendants cite *Otworth v. Southern Pacific Transportation Co.*, 166 Cal. App.3d 452, 459 (1985) for the proposition that Plaintiffs alleging a breach of contract are required to set out the terms "verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." Def. Mot., p. 14. Not so. The Court in

*Miles* declined to follow *Otworth* when cited by the movant in support of a motion to dismiss a breach of contract cause of action. The Court in *Miles* found that the *Otworth* court "read more into that statement than is actually there…[t]he correct rule is that a plaintiff **may** plead the legal effect of the contract rather than its precise language." *Miles,* 236 Cal. App. 4th at 402 (citing *Constr. Protective Servs., Inc., v. TIG Specialty Ins. Co.*, 29 Cal 4th 189, 199 (2002), as modified (Nov. 14, 2002) (emphasis added). Thus, plaintiff's decision in *Miles* "[not] to attach or to set out verbatim the terms of the contract was not fatal to his breach of contract cause of action." Id.

Likewise, Plaintiffs' decision not to attach or set out verbatim the terms of the contract is not fatal to the breach of contract cause of action here. Defendants' attempt to have this cause of action dismissed based on the failure to attach or cite verbatim the contract is a stretch and demonstrates the weakness of its defense. Any reasonable and logical person would understand that the claims of breach by Defendants relate to the IVF services Plaintiffs sought and paid for from Defendants. Clearly the breach resulted from Defendants failure to transfer Plaintiffs' own embryos to attempt to get pregnant. Instead, Defendants improperly transferred two separate and distinct embryos belonging to Couple A and Couple B which resulted in A.P. becoming pregnant with the biological children of Couple A and Couple B. Further, Defendants breached their contract by failing to store,

freeze, and thaw Plaintiffs' embryos, resulting in the total loss of at least two embryos belonging to Plaintiffs. See Compl., ¶¶ 124-6. This is all specifically set forth in the complaint and lays out a plausible cause of action.

Insofar as it is alleged by Defendants that Dr. Hong is not a party to the contract, he is directly responsible for the conduct and activities that form the basis of Defendants' breach of contract, and he assumed the obligations of performing the contract. Generally, a contract may bind non-parties such as an intended third-party beneficiary, an agent, or an assignee. See *Benasra v. Marciano*, 92 Cal. App. 4th 987, 991 (2001). Further, while a "[b]reach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligations" that is not the case here. *Gold v. Gibbons*, 178 Cal. App. 2d 517, 519 (Ct. App. 1960) (citing *Galusha v. Fraser*, 178 Cal 652 (1918). Dr. Hong assumed the obligations of the contract and was bound to follow it, lest his breach also be considered a breach by the remaining Defendants. Dr. Hong acted with authority as the laboratory director involved in Plaintiffs' IVF treatment at CHA Fertility. See Compl., ¶¶ 10; 39-40. Moreover, CHA Fertility boasted that Dr. Hong was a globally renowned scientist serving as the Laboratory Director for CHA Fertility Center and has helped CHA Fertility to achieve its success rates. Id. at ¶¶ 73-4. Additionally, the embryo transfers that formed the

basis of the breach of contract were performed under Dr. Hong's direction. Id. at ¶ 99. Accordingly, Defendants' Motion to Dismiss should be denied.

**d. Count Seven: Breach of The Duty of Good Faith and Fair Dealing**

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in contract performance and enforcement that neither party may do anything to deprive the other party of the benefits of the contract." *Luera v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 75 (2013). "This covenant 'required each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.'" *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co*, 723 F.2d 700 (9th Cir. 1984) (quoting *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979).

Defendants rely on their previous arguments that the Breach of the Duty of Good Faith and Fair Dealing should be dismissed because Plaintiffs have not pled the express terms of the contract, however, Plaintiffs are not required to plead the express terms of the contract. See *Miles,* 236 Cal. App. 4th at 402 (2015). Accordingly, Defendants' Motion to Dismiss Count Seven should be denied.

e. **Count Eight: Breach of Fiduciary Duty**

Count Eight should not be dismissed because Defendants maintained a position of trust and confidence with Plaintiffs during the IVF process, including

the collection, storage, thawing, and implantation of embryos. In *Jameson v. Desta*, 215 Cal. App. 4th 1144 (2013), Plaintiff alleged a breach of fiduciary duty when his physician prescribed him with the drug interferon. Plaintiff alleged that "Desta held a position of trust, causing [Plaintiff] to rely on Desta's statements and recommendation that [Plaintiff] begin treatment and stay on it." Id. at 1164. The Court held that Plaintiffs' allegations adequately pled a claim for breach of fiduciary duty. Id. at 1165. Plaintiffs similarly allege the same set of facts that "Defendants were in a position of trust and confidence with respect to Plaintiffs' care. Plaintiffs knew little or nothing about IVF and, as a result, placed great reliance, faith and confidence in the advice and acts of Defendants." See Compl. ¶ 181. Plaintiffs' reliance, faith, and confidence in Defendants were illustrated when they called Defendant Hong and Berger after learning that their ultrasounds showed that A.P. was carrying two male babies. Id. at ¶ 103-4. Yet, instead of acting pursuant to their fiduciary duties to discover what occurred, Defendants tried to convince Plaintiffs that the ultrasounds were wrong and to dissuade Plaintiffs from thinking there was an issue. Id. at ¶ 107. Accordingly, Plaintiffs have alleged a breach of fiduciary duty and Defendants' Motion to Dismiss Count Eight should be denied.

**f. Count Nine: New York Deceptive Trade Practices Act**

Plaintiffs' Complaint, originally filed in federal court in New York, sought to enforce the New York Deceptive Trade Practices Act against Defendants resulting from Defendants' conduct. To the extent that the Court determines that it is unable to enforce the New York Deceptive Trade Practices Act, Plaintiffs request that they be permitted to amend the complaint to plead Defendants' violations under the California Unfair Competition Law ("UCL") to establish to unlawful, unfair, and fraudulent business practices which led Defendants to fail to create, maintain, and supervise Plaintiffs' embryos at all relevant times when the embryos were within Defendants possession. The facts that would sustain a UCL cause of action mirror those set forth in the complaint for deceptive trade practice and would of no surprise to Defendants to be asserted should California law apply.

**g. Count Thirteen: Bailment**

A bailment is the delivery of a thing in trust upon an implied or express contract. See *Greenberg Brothers, Inc., v. Ernest W. Hahn, Inc.*, 246 Cal. App. 2d 529, 531 (1966). Thus, the deposit of personal property to be cared for until the owner demands return constitutes bailment. Id. at 531. Defendants contend that Plaintiffs' cause of action for bailment should be dismissed based on an erroneous reading of *Moore v. Regents of University of California*, 51 Cal.3d 120, 137 (1990)

for the proposition that human tissue is not property. However, multiple courts have since held that individuals have a property interest in their own biological material that is being stored for later re-introduction to their own bodies. The Supreme Court decided *Moore* on the basis that the plaintiff had no ownership or right of possession over cells that had been excised and donated, used for research, or otherwise disposed of. Id. at 137. In *Moore*, the plaintiff had his spleen removed after being diagnosed with leukemia. Id. at 126. Doctors obtained samples of his blood and other biological materials, and used cells from those samples in connection with research that ultimately resulted in valuable patents. Id. Moore claimed a property interest in the products created from his biological material. Id. at 135. Critical to the Court's decision in *Moore* was that plaintiff did not have any expectation of continued ownership in those cells because he went to have them removed. *Moore,* 51 Cal 3d. at 137.

Moreover, *Moore* by its own terms "[did] not purport to hold that excised cells can never be property for any purpose whatsoever." Id. at 142. Other cases have recognized ownership of bodily material as personal property when it is stored for potential re-introduction to the individual's body. See *Hecht v. Superior Court*, 16 Cal. App. 4th 836, 846 n.4, 850 (1993) (holding that one's interest in his own stored sperm is "sufficient to constitute 'property'"); *Branzell v. Cal. Cryobank,* LLC, 480 F. Supp. 3d 1080, 1089 (C.D. Cal. 2020) (stating that "individuals have

a property right in their sperm" and recognizing a claim for conversion of a sperm sample); *Robertson v. Saadat*, 48 Cal. App. 5th 630, 645 (2020) (reiterating property interest in sperm samples).

*Hecht* is easily distinguished from *Moore:* "[u]nlike the facts in *Moore,* a contract with the sperm bank purports to evidence decedent's intent and expectation that he would, in fact, retain control over the sperm following its deposit." *Hecht,* 16 Cal. App. 4th at p. 846 fn.4. Accordingly, Plaintiffs maintained a property right in the embryos which Defendants received and maintained control over until such time when Plaintiffs desired to utilize them. See Compl., ¶¶ 211-23. Defendants' Motion to Dismiss Count Thirteen should be denied.

**h. Count Fourteen: Battery**

"A battery is an intentional tort that occurs when a doctor performs a procedure without obtaining any consent." *Saxena v. Goffney*, 159 Cal. App. 4th 316, 324 (2008). "Where a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery." *Cobbs v. Grant,* 8 Cal. 3d 229, 239 (1972). Defendants allege that because Plaintiff consented to an IVF procedure and received an IVF procedure, that the result is something short of battery. In support of their claims, Defendants cite to *SpineCare Medical Group, Inc.*, 52 Cal. App. 4th 1285, 1313 (1997). Def. Mot., p. 18. There, the court agreed

that because Mr. Daum agreed to surgery using the Wiltse II implant and he received the Wiltse II implant, the denial of a request for battery instruction was proper. Id. Further, it is worth noting that the cases cited by Defendants do not deal with a continued and sustained battery which left permanent physical scarring on Plaintiff A.P. via her cesarean section. See Compl. ¶ 109.

Here, Plaintiffs consented to an IVF procedure to become pregnant with their own embryos – but what Plaintiffs received was a substantially different treatment resulting in Plaintiff A.P. acting as an involuntary surrogate carrier for Couple A and Couple B's fetuses, to which Plaintiffs were not advised of nor consented. See Compl. ¶ 208. Further, had Plaintiffs been advised that this error was even a possibility, Plaintiffs would not have consented to any procedure at all. Id. Notably, the possibility of being implanted with someone else's embryo is not an identified risk set forth by Defendants.

Moreover, the significant question is whether Plaintiffs were subject to a "substantially different treatment for which consent was not obtained." Cobb, 8 Cal. 3d at 239. They unequivocally were. In *Kaplan v Mamelak,* 162 Cal. App. 4th 637 (2008), plaintiff-appellant asserted battery, among other causes, as a result of the surgeries performed by defendant-respondent on the incorrect disks in plaintiff-appellant's back. Similar to Defendants in the instant case, defendant-respondent in Kaplan asserted that "[plaintiff] generally consented to the operations,

[defendant] asserts his surgeries on the incorrect disks may constitute negligence, but not battery." Id. at 645. The court held that "[i]n the absence of any definitive case law establishing whether operating on the wrong disk within inches of the correct disk is a 'substantially different procedure,' we conclude the matter is a factual question for a finder of fact to decide and at least in this instance, not one capable of being decided on demurrer." *Kaplan v Mamelak,* 162 Cal. App. 4th 637, 647 (2008). The Court found that the question of whether the operation was a substantially different procedure was a question for the jury, and not suitable for dismissal on a demurrer.

Here Defendants apathetically allege that Plaintiffs sought in-vitro fertilization and received in-vitro fertilization, albeit with the wrong embryos. Assuming, *arguendo,* that Defendants' arguments are legitimate, which they are not, Defendants exceeded the consent which only gave Defendants the ability to utilize Plaintiffs' own embryos for transfer. *Kaplan* found that "[t]he consent form [plaintiff] appellant signed gave [defendant] respondent permission to operate only on disk T8-9 . . .[defendant] respondent may have committed battery by operating on [plaintiff] appellant's T6-7 and T7-8 disks when he did not have permission to operate on any disk other than T8-9." Id. at 645-6. Based on the Court's ruling in *Kaplan,* the question of whether Plaintiff's improper implantation of embryos belonging to other couples constitutes a substantially different procedure (e.g.

surrogacy) is a question for the jury, not for resolution on a Motion to Dismiss. Accordingly, Defendants' Motion should be denied.

**i. Count Fifteen: Conversion**

The tort of conversion in California comprises three elements "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Voris v. Lampert,* 7 Cal.5th 1141, 1150 (2019) (citing 5 Witkin, Summary of Cal. Law § 810 at p.1115 (11th ed. 2017). Defendants suggest that their own negligence vitiates any claim of conversion against them. Def. Mot., p. 21. Not so. Notably absent from the elements is any requirement of wrongful intent or motive necessary to sustain proof of conversion. Id. In other words, "[c]onversion is a strict liability tort. It does not require bad faith, knowledge, or even negligence; it requires only that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." *Voris v. Lampert,* 7 Cal.5th at 1158 (2019).

Here, Plaintiffs have ownership rights and a right to possession of their embryos which were placed in Defendants' possession for cryopreservation on or about February 18, 2018. See Compl. ¶ 92. Plaintiffs planned another attempted transfer on or about August 20, 2018. Id. at 99. In preparation for the planned transfer, Plaintiffs believed that Defendants thawed two female embryos. Id. at ¶

98. However, unbeknownst to Plaintiffs at the time, Defendants implanted two male embryos, one belonging to Couple A and one belonging to Couple B in Plaintiff A.P. at the August 20, 2018 transfer. Because there has not been any discovery concerning Defendants' actions with respect to Plaintiffs' embryos, Plaintiffs believe that Defendants never thawed and/or lost or destroyed Plaintiffs' embryos. Id. at ¶ 125. Under either circumstance, Defendants have been unable to advise Plaintiffs of the whereabouts of their two female embryos, indicating that Defendants have disposed of Plaintiffs' embryos in a manner inconsistent with Plaintiffs' rights. Id. at ¶ 124-5; 229-237. Accordingly, Defendants' Motion should be denied.

**j. Count Ten: Misrepresentation;**
**Count Sixteen: Deceit and Fraudulent Concealment**

To establish intentional misrepresentation, the plaintiff must provide the following: "(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." *GemCap Lending, LLC v. Quarles & Brady, LLP,* 269 F.Supp. 3d 1007, 1039 (C.D. Cal. 2017) aff'd sub nom. *GemCap Lending I, LLC v. Quarles & Brady, LLP,* 787 F. App'x 369 (9th Cir. 2019). Further, concealment requires "(1) concealment of a material fact; (2) a duty to disclose the fact; (3) intent to defraud; (4) the plaintiff

was unaware of the fact and would have acted differently if plaintiff knew; and (5) resulting damage." Id.

Generally, fraud claims are required to be plead with additional facts so as to apprise the defendant of the specific ground for the charge and to enable the court to determine the basis for the claims, however, "less specificity is required if the defendant would likely have greater knowledge of the facts than the plaintiff." *Cisco Sys., Inc., v. STMicroelectronics, Inc.,* 77 F.Supp. 3d 887, 897 (N.D. Cal. 2014) (citing *Chapman v. Skype, Inc.*, 220 Cal.App. 217, 230-1 (2013)).

Here, Plaintiffs have pleaded plausible claims of Misrepresentation, Deceit and Fraudulent Concealment with sufficient particularity in light of Defendants' greater knowledge with respect to the facts present. Defendants claim that Plaintiffs fail to specifically allege "who said what to whom, or when." Def. Mot, p. 22. However, Plaintiffs have alleged that Defendants misrepresented their ability to properly identify, store, and transfer Plaintiffs' embryos to Plaintiff A.P. See Compl. ¶ 196. Defendants knew that their storage and labeling policies, thawing and other procedures were insufficient to protect against the type of conduct that occurred in the instant case. Id. Moreover, by focusing on the specific speakers, Defendants attempt to shift focus from CHA Fertility's knowledge as the principal. This is especially pronounced where CHA Fertility unilaterally possesses the information about which of its specific personnel possessed this knowledge. See

*Jones v. ConocoPhillips Co.,* 198 Cal App. 4th 1187, 1198-1200 (2011) (holding that plaintiffs need not allege specific knowledge of specific corporate employees when alleging a claim of fraudulent concealment against a corporate entity).

Further, Defendants' failure to disclose the inadequacies of the policies and procedures and affirmative misrepresentations that Defendants were experts in the field of fertility services are sufficient to plead Defendants intent. This is especially true because "fraud. . . is not generally practiced in open light of day," and for that reason is not susceptible of direct proof. *Vogelsang v. Wolpert,* 227 Cal. App. 2d 102, 111 (1964). Fraud often must be spelled out "by inference and by the circumstances surrounding the transaction, the relationship and interests of the parties. Id.

Plaintiffs' reliance is obvious and alleged clearly, in that Plaintiffs would not have entered into a contract or undergone two IVF transfers had they been aware of the true nature of Defendants' methods, which ultimately led to the commingling of embryos and transfer to Plaintiff A.P. See Compl., ¶ 209. Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. *Engalla v. Permanente Med. Grp., Inc.,* 15 Cal. 4th 951, 976-7 (1997). A misrepresentation is "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. Id. Here, a reasonable Plaintiff would attach

paramount importance to knowing that Defendants could safely store, label, and thaw his/her embryos without commingling them with others. See e.g. *Stevens v. Superior Court,* 180 Cal. App. 3d 605, 610 (noting that safety risks are material). Plaintiffs clearly relied on Defendants' misrepresentations and fraudulent concealment of facts to their detriment. Accordingly, Counts ten and sixteen should not be dismissed.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss should be overruled in its entirety. However, if the Court believes that any causes of action should be dismissed based on Defendants' Motion, Plaintiffs respectfully request leave to amend the Complaint in accordance with Fed. R. Civ. P. 15.

Dated: July 28, 2023 Frier Levitt, LLC

By: ______________________________
Michelle L. Greenberg
Jonathan E. Levitt
Dae Y. Lee
Attorneys for Plaintiff, A.P. and Y.Z.

Dated: July 28, 2023 Peiffer Wolf

By: ______________________________
Attorneys for Plaintiff, A.P. and Y.Z

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs A.P. and Y.Z. certifies that this brief contains 6725 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 28, 2023 Frier Levitt, LLC

By: ______________________________
*Michelle L. Greenberg, Esq.*
*Attorneys for Plaintiff, A.P. and Y.Z.*

Dated: July 28, 2023 Peiffer Wolf

By: ______________________________
*Attorneys for Plaintiff, A.P. and Y.Z*
*Additional Counsel*

# CERTIFICATE OF SERVICE

STATE OF NEW JERSEY ]
] ss.
COUNTY OF MORRIS ]

I am employed by the law firm Frier Levitt, counsel for Plaintiffs. I am over the age of 18 and not a party to the within action; my business address is Frier Levitt, LLC, 84 Bloomfield Avenue, Pine Brook, New Jersey 07058. I am admitted Pro Hac Vice to this Court.

I hereby certify that on July 28, 2023, I caused all of the pages of the foregoing documents described as: **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS COMPREHENSIVE HEALTH FOR ALL FERTILITY MEDICAL GROUP, INC., AND SIMON HONG, PH.D'S MOTION TO DISMISS PORTIONS OF THE COMPLAINT** to be electronically filed with the United States District Court, Central District of California by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system regarding the case of A.P. and Y.Z. v. CHA Health Systems, Inc., et al., Court Case No. 2:23-cv-01621-FLA-KES.

I declare under penalty of perjury under the law of the United States of America that I am employed by a member of the Bar of this Court and that the foregoing is true and correct.

Executed on July 28, 2023, in Pine Brook, New Jersey.

*<u>/s/ Michelle L. Greenberg</u>*
Michelle L. Greenberg