Adam Wolf (SBN 215014)
Email: awolf@peifferwolf.com
Peiffer Wolf Carr Kane Conway & Wise
3435 Wilshire Blvd. Suite 1400
Los Angeles, CA 90010
Telephone: 415.766.3545
Facsimile: 415.840.9435

Jonathan E. Levitt (admitted PHV)
Michelle L. Greenberg (admitted PHV)
Dae Y. Lee (admitted PHV)
Email: jlevitt@frierlevitt.com
mgreenberg@frierlevitt.com
dlee@frierlevitt.com
Frier Levitt, LLC
84 Bloomfield Avenue
Pine Brook, New Jersey 07052
Telephone: 973-618-1660
Facsimile: 973-618-0650

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.P. and Y.Z.,<br><br>Plaintiffs,<br><br>vs.<br><br>CHA HEALTH SYSTEMS, INC., COMPREHENSIVE HEALTH FOR ALL, FERTILITY MEDICAL GROUP, INC., CHA HEALTH GROUP, INC., CHA HEALTH SYSTEMS, INC. D/B/A CHA FERTILITY CENTER LOS ANGELES, CHA FERTILITY CENTER LOS ANGELES, JOSHUA J. BERGER, M.D. and SIMON HONG, PH.D.,,<br><br>Defendant. | Civil No.: 2:23-cv-01621-FLA-KESx<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHA HEALTH SYSTEMS, INC.'S MOTION TO DISMISS PORTIONS OF COMPLAINT**<br><br>TRIAL DATE: None Set<br>ACTION FILED: 07/12/19<br><br>Assigned to Hon. Fernando L. Aenlle-Rocha, Courtroom 6B, for all purposes including trial |

# TABLE OF CONTENTS


**I. INTRODUCTION AND FACTUAL BACKGROUND…………….…………….5**

**II. STANDARD ON A MOTION TO DISMISS UNDER FRCP 12(B)………..….9**

**III. NEW YORK LAW SHOULD APPLY BASED ON CHOICE OF LAW ANALYSIS…..……………………….…………………………………….………10**

**IV. PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CAUSES OF ACTION…………………………………………………………………………13**

**a. CHA Health Is Bound By CHA Fertility's Contracts Because Employees of CHA Fertility Are Also Employees of CHA Health…………………………14**

**b. Count Five: Reckless and Wanton Misconduct……………………………..…..16**

**c. Count Six: Breach of Contract………………………………………………..…..17**

**d. Count Seven: Breach of The Duty of Good Faith and Fair Dealing….……….18**

**e. Count Eight: Breach of Fiduciary Duty……...………………………….……….…..19**

**f. Count Nine: New York Deceptive Trade Practices Act…....…………...………20**

**g. Count Thirteen: Bailment……………………………………….…………………...20**

**h. Count Fifteen: Conversion……………………………………….…………….22**

**i. Count Sixteen: Deceit and Fraudulent Concealment…………….………......23**

**V. CONCLUSION……………………………………………………….………….25**

# TABLE OF AUTHORITIES

**Cases**


***Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) ................................12**
***Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)..................................................10, 18**
***Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).........................................10**
***Branzell v. Cal. Cryobank,* LLC, 480 F. Supp. 3d 1080, 1089 (C.D. Cal. 2020) 24**
***Cahill v. Liberty Mutual Ins., Co.,* 80 F.3d 335, 337-8 (9th Cir. 1996)...............10**
***California Logistics, Inc., v. State*, 161 Cal. App.4th 242, 247 (2008) .................10**
***Castaneda v. Ensign Grp., Inc.,* 229 Cal. App. 4th 1015, 1019 (2014).................16**
***Chapman v. Skype, Inc.,* 220 Cal.App. 217, 230-1 (2013) ...................................26**
***Cisco Sys., Inc., v. STMicroelectronics, Inc.,* 77 F.Supp. 3d 887, 897 (N.D. Cal. 2014)……………………….........................................................................26**
***Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal.App.5th 840 (2019)…………………………. .......................................................................17**
***Egan v. Mutual of Omaha Ins. Co.,* 24 Cal. 3d 809, 818 (1979)..........................20**
***Engalla v. Permanente Med. Grp., Inc.,* 15 Cal. 4th 951, 976-7 (1997) ...............28**
***FT Travel—New York, LLC v. Your Travel Ctr., Inc.,* 112 F. Supp. 3d 1063, 1073-4 (C.D. Cal. 2015)………………….. ..................................................10**
***Greenberg Brothers, Inc., v. Ernest W. Hahn, Inc.*, 246 Cal. App. 2d 529, 531 (1966)……………………….. ..............................................................................22**
***Hecht v. Superior Court* (1993) 16 Cal. App. 4th 836, 846 n.4, 850 .............24, 25**
***In re Yagman*, 796 F.2d 1165, 1170 (9th Cir. 1986)...............................................11**
***Jameson v. Desta*, 215 Cal. App. 4th 1144 (2013) .................................................21**
***Jones v. ConocoPhillips Co.*, 198 Cal App. 4th 1187, 1198-1200 (2011).............27**
***Luera v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 75 (2013).......20**
***McGhee v. Arabian American Oil Co.,* 871 F.2d 1412, 1422 (9th Cir. 1989).....13**
***Miles v. Deutsche Bank Nat'; Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015)..........19**
***Moore v. Regents of University of California*, 51 Cal.3d 120 (1990)...................23**
***Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir. 1993)...............11**
***Robertson v. Saadat (*2020) 48 Cal. App. 5th 630, 645 .........................................24**
***San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co,* 723 F.2d 700 fn14. (9th Cir. 1984)…………………….....................................................................20**
***Stevens v. Superior Court*, 180 Cal. App. 3d 605, 610 .........................................28**
***Stevens v. Superior Court*, 75 Cal.App.4th 594, 601 .............................................10**
***United States v. Bestfoods*, 524 U.S. 51, 64 (1998)...............................................16**
***Vogelsang v. Wolpert*, 227 Cal. App. 2d 102, 111 (1964)......................................27**
***Voris v. Lampert*, 7 Cal.5th 1141, 1150 (2019) ......................................................25**

**Rules and Treatise**

**5 Witkin, Summary of Cal. Law § 810 at p.1115 (11th ed. 2017)........................25**
**Fed. R. Civ. P. 15………………….. ..............................................................22, 28**
**Fed. R. Civ. P. 8(a)(2)……………. ...................................................................9, 18**
**Fed. R. Civ. P. 8(d)(3)……………...................................................................10**
**Fed. R. Civ. P. 12(b)…………………………………………………….……..10**

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs' Complaint arises from CHA Health Systems, Inc., ("CHA Health" or "Defendant") liability and ultimate responsibility over the actions of CHA Fertility and Dr. Simon Hong (collectively with CHA Health as "Defendants"). By way of background, Kwang Yul Cha, M.D. operates CHA Health Korea, which maintains ownership interest in both CHA Health and CHA Fertility. See Complaint, ¶ 26-8. In fact, CHA Health Korea is the parent company of CHA Health and CHA Fertility, with CHA Fertility being opened by CHA Health Korea in 2000. Id. at ¶ 30; ¶ 34. CHA Health is organized primarily for the purpose of providing operations and management of medical facilities, like CHA Fertility, within the United States. See Complaint, ¶ 23. Importantly, CHA Fertility's website represented that Kwang Yul Cha was the "founder" of CHA Health and CHA Fertility. Id. at ¶ 60. Illustrating the link between CHA Health and CHA Fertility, Kwang Yul Cha even welcomed Dr. Berger as the newest member of CHA Fertility. Id. at ¶ 62.

At all relevant times, CHA Health maintained ultimate responsibility over the operation and management of CHA Fertility. Id. ¶ 41. It was only through CHA Health's carefully crafted pedigree, including that of CHA Health Korea and CHA Fertility, that led Plaintiffs to select CHA Fertility to assist with in-vitro fertilization ("IVF"). Id. at ¶ 50. Plaintiffs reviewed substantial information including CHA Fertility's websites, advertisements, representations, and even CHA Fertility's claim that it is "known as the 'mecca of reproductive medicine' with world-class

treatments for infertility." Id. at ¶¶ 51-53. In making the difficult decision to pursue fertility treatment in California, 3,000 miles away from their home in New York, Plaintiffs consulted with and were persuaded that they could rely on Defendants, including Dr. Hong for world-class fertility treatments. Id. at ¶¶ 79-83. In fact, Defendant Simon Hong, M.D. is identified as an employee of CHA Health in documents filed with the California Secretary of State dated November 15, 2005. See Exhibit A[1].

Plaintiffs entered into an IVF service contract with Defendants on January 9, 2018 Id. at ¶ 86. Y.Z. provided sperm and A.P. underwent the egg retrieval process and the eggs were fertilized using Y.Z.'s sperm, ultimately creating five viable embryos (four male and one female) for later use in helping A.P. to become pregnant with children of their own. Id. at ¶¶ 86, 88-91. Over the course of several months, A.P. continued following IVF protocol prescribed by Defendants and conducted in New York to prepare her body for embryo transfer and the potential pregnancy that could result. Id. at ¶¶ 93-94. A.P. underwent the first transfer but it did not result in pregnancy. Id. at ¶¶ 95-96.

When the first transfer did not result in pregnancy, Plaintiffs directed Defendants to thaw two female embryos for a second attempt to transfer. Id. at ¶ 95-98. These procedures were performed by or at the direction of Dr. Hong. Id. at

[1] See Request for Judicial Notice and Declaration of Michelle L. Greenberg filed contemporaneously.

¶ 92. According to public records filed by CHA Health, Dr. Hong was an employee of CHA Health. See Request for Judicial Notice. Likewise, Dr. Hong was identified as CHA Fertility's Lab Director on CHA Fertility's website. See Request for Judicial Notice.

On August 20, 2018, A.P. underwent a second attempt to transfer two embryos, and approximately one month later, A.P. learned she was pregnant with twins. Id. at ¶¶ 99-100. Plaintiffs later learned that A.P. was carrying twin boys. During a telephone call, Drs. Hong and Berger assured Plaintiffs that the ultrasound results were not accurate and even provided an anecdotal story in an intentional attempt to persuade Plaintiffs about the inaccuracy of ultrasounds. See Compl., ¶ 103-8. Despite being told that two separate ultrasounds conducted two months apart identified that A.P. was carrying two male fetuses, Defendants intentionally stated that the two separate ultrasound (and by implication, the technician conducting the ultrasound) conducted at the three and five-month stages of pregnancy incorrectly identified **both** fetuses **each** time. Id. Because there has been no discovery (other than jurisdictional) at this stage of the case, it is currently unknown what, if any actions Defendants took internally upon Plaintiffs notifying them that A.P. was carrying two male fetuses - any actions taken at that time are relevant and probative of Defendants' state of mind.

In what should have been the happiest moment of Plaintiffs' lives, happiness quickly gave way to severe emotional distress after A.P. gave birth via caesarean

section to twin boys who were not of Asian descent. Id. ¶ 109. On or about April 2, 2019, Executives of Defendants CHA Fertility (Yumie Lee) and CHA Health (Young Suk Kim), and Dr. Hong traveled to New York to meet Plaintiffs while they were still in the hospital. Id. at ¶ 112. DNA testing confirmed what Plaintiffs already knew – the children that A.P. carried for nine months and gave birth to were not related to her or her husband. Id. at ¶ 116. DNA testing further confirmed that the babies were also not related to each other. Id. at ¶ 117. Unbeknownst to Plaintiffs at the time, Defendants internally identified two couples who had been receiving treatment at the same time as Plaintiffs and attempted to match the infants to Couple A and Couple B. After a court intervention, the infants were taken from Plaintiffs and given to their genetic parents. Id. at ¶¶ 119-121. A.P. essentially served as an unintended and involuntary surrogate to Couple A and Couple B and was stripped of her intended and expected motherhood.

However, CHA Health's investigation and knowledge remain shrouded in secrecy. Plaintiffs are without concrete answers concerning the improper implantation of the incorrect embryos because Defendants collectively have attempted and are currently attempting to fraudulently conceal any wrongdoing to categorize its own intentional or otherwise reckless conduct as merely negligent. Despite Plaintiffs' requests to identify the location of their remaining embryos numerous times, Defendants have not provided any answer. CHA Health's Motion to Dismiss relies on a number of incorrect factual and legal conclusions that do not

warrant dismissal of Plaintiffs' claims. Taking the factual allegations in the Complaint as true, Plaintiffs have established plausible and meritorious causes of action and therefore, Defendants' Motion to Dismiss should be denied in its entirety.

## II. STANDARD ON A MOTION TO DISMISS UNDER FRCP 12(B).

A complaint is merely required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2). Moreover, pleading rules permit a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). To satisfy this requirement, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiffs "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). "The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party." *FT Travel—New York, LLC v. Your Travel Ctr., Inc.,* 112 F. Supp. 3d 1063, 1073-4 (C.D. Cal. 2015) (citing *Cahill v. Liberty Mutual Ins., Co.,* 80 F.3d 335, 337-8 (9th Cir. 1996). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555-6.

Generally, and to the extent that Defendants cites the standards raised on a

demurrer for the Court, a court will "assume[s] the truth of the allegations in the complaint." *California Logistics, Inc., v. State,* 161 Cal. App.4th 242, 247 (2008). Thus, "[f]or the purpose of determining the effect of a complaint, its allegations are liberally construed, with a view toward substantial justice." *Stevens v. Superior Court*, 75 Cal.App.4th 594, 601.

## III. NEW YORK LAW SHOULD APPLY BASED ON CHOICE OF LAW ANALYSIS.

Plaintiffs do not concede that California law applies to this dispute. Rather, Plaintiffs assert that New York law applies to this dispute. Defendants make a single conclusory allegation that California law applies, without any consideration of the governmental interests between both New York and California. However, since Defendants' Motion cites exclusively California law, Plaintiffs likewise cite California law for the sole purpose of opposing Defendants' Motion. Defendants further rely on the New York District Court order transferring this matter, however, the New York District Court's "characterization of the transfer is not controlling." *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir. 1993). Generally, courts apply the choice-of-law rules of the transferee district. Id.. California courts use a "governmental interests" analysis. In re Yagman, 796 F.2d 1165, 1170 (9th Cir. 1986).

California's governmental interest analysis requires that:

> [T]he court examines the substantive law of each jurisdiction to

> determine whether the laws differ as applied to the relevant transaction. Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. […] if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied.

*Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (internal citations omitted).

Here, Plaintiffs are and were at all times during the parties' relationship residents of New York. Defendants CHA Health, CHA Fertility, Dr. Berger and Dr. Hong operated within California, but Defendants promoted and marketed their services extensively in the stream of interstate commerce. See Compl., ¶¶ 52-70. Through Defendants extensive efforts aimed at obtaining patients outside of California, Defendants marketing reached Plaintiffs in New York who ultimately incurred more than $100,000 in expenses, much of which was paid directly to Defendants. See Compl., ¶¶ 54; 84. As further evidence of Defendants' campaign, Defendants even offered concierge services such as booking flights, local transportation, and other accommodations aimed exclusively at obtaining patients located outside of California. Id. at ¶ 55. The concierge services increased Defendants' value and appeal outside of California and exclusively targeted patients like Plaintiffs who sought specialized reproductive medicine. Defendants' interactive website also allowed for patients to complete and submit new patient forms and

schedule consultations while in the comfort of their own home. Id.

Defendants rely on California law which differs substantively from New York in an attempt to deprive Plaintiffs of their rights under New York law, as well as New York's interest in protecting its own citizens against foreign actors that create and market services towards New York residents. Having established that more than one jurisdiction maintains a legitimate interest, California courts focus on the comparative impairment of the interested jurisdiction, and must apply the law of the state whose interest would be more impaired if its law were not applied. *McGhee v. Arabian American Oil Co.,* 871 F.2d 1412, 1422 (9th Cir. 1989).

Defendants admit that "New York certainly would have an interest in protecting its residents..." (ECF No. 17) CHA Health Systems Letter dated September 20, 2019. New York has a substantial interest in the provision of any kind of goods or services directed at the residents located within the state, most especially sensitive medical services like fertility counseling. Defendants were also clearly aware that Plaintiffs were citizens of New York, and continually collaborated with Plaintiff A.P.'s physician in New York, as well as labs located in New York. See Compl., ¶ 94. In fact, Defendants issued over fifteen orders to Plaintiff's physician and laboratories located within New York. Id. Further, upon learning that A.P. had given birth in New York to two male infants that did not belong to her, Plaintiffs contacted Dr. Berger and Dr. Hong. Id. at ¶ 111. Plaintiffs' contact resulted in Dr. Hong, CHA Fertility's Chief Operating Officer Yumi Lee, and CHA Health's Chief

Executive Officer Young Suk Kim travelling to New York to meet with Plaintiffs. Id. at ¶ 112. Genetic testing kits were sent to Plaintiffs in New York and Plaintiffs ultimately learned the results of the tests while in New York. Id.

Given that Defendants had continued and sustained marketing and promotion aimed at New York, the acts and omissions, and the substantial portion of events occurred within New York, New York has a more substantial interest in protecting its citizens than California does. Moreover, New York's interests in the protection if its own citizens would be more impaired than California's interest in protecting Defendants that recklessly stored, maintained, thawed, transferred, and ultimately lost the embryos of Plaintiffs. Accordingly, New York law, not California law, should be applied to this dispute.

## IV. PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CAUSES OF ACTION.

Plaintiffs have sufficiently pled their causes of action against Defendant on Counts 5, 6, 7, 8, 9, 13, 15, and 16 arising out of Defendant's actions, taken over the course of the contractual relationship and IVF treatment. Plaintiffs seek damages relating to Defendant's intentional, reckless, and/or negligent acts that resulted in Defendants improperly impregnating A.P. with the wrong embryos and losing Plaintiffs' remaining embryos. Defendant's actions are the direct cause of Plaintiffs resulting damages alleged in the Complaint.

However, Defendant's contention that Counts 5, 6, 7, 8, 9, 13, 15, and 16

should be dismissed because they are not sufficiently plead is incorrect because Defendant's arguments misconstrue relevant law and facts in the Complaint. Plaintiffs' complaint sets forth detailed facts that are plausible to sustain the causes of action and accordingly, for the reasons set forth below, Defendant's Motion should be denied.

**a. CHA Health Is Bound By CHA Fertility's Contracts Because Employees of CHA Fertility Are Also Employees of CHA Health.**

Generally, California law specifies the elements necessary to define an employer as "exercise[ing] control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Castaneda v. Ensign Grp., Inc.,* 229 Cal. App. 4th 1015, 1019 (2014). Employer is broadly defined to include "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of [an employee]" Id. (citing *Guerrero v. Superior Court,* 213 Cal.App. 4th, 912, 947 (2014)). Moreover, liability is appropriate where "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management and the parent is directly a participant in the wrong complained of". See *United States v. Bestfoods*, 524 U.S. 51, 64 (1998) (internal quotations omitted).

Here, there is preliminary evidence that has been produced by Defendants during early discovery that employees of CHA Fertility were also considered

employees of CHA Health such that CHA Health is vicariously liable for the conduct of its employees that resulted in the improper transfer and loss of embryos. As an example, CHA Health and CHA Fertility shared many of the same employees, including Chief Operations Officer Yumi Lee. Ms. Lee traveled along with another CHA Health executive, Chief Operating Officer Young Suk Kim, to New York to meet with Plaintiffs days after they delivered babies that were not genetically related to Plaintiffs of each other. See Compl., ¶ 113. Moreover, Defendant Dr. Hong even served as the registered agent for CHA Health and is held out as the Laboratory Director of CHA Fertility. See Exhibit A and B to Request for Judicial Notice.

To the extent that CHA Health contends that it is not a signatory or direct party to the contracts, California courts have held that a non-signatory parent company of a signatory subsidiary can be bound to the subsidiary's contract when the parent company wielded significant control over the subsidiary. See *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal.App.5th 840, 864 (2019). Here, CHA Health is identified in Plaintiffs' contract as being an entity affiliated with CHA Fertility and given express permission to use Plaintiffs' patient information for research and marketing purposes. Moreover, CHA Health maintains ownership and management responsibilities over CHA Fertility, a fact that was confirmed by Defendants in preliminary discovery. See Complaint, ¶ 23.

CHA Health acts directly as CHA Fertility's management company and exercises broad control over working conditions of CHA Fertility, which likely

includes the creation and implementation of policies and procedures which ultimately led to the implantation of the wrong embryos into Plaintiff A.P. Id. at ¶ 35. Accordingly, there is sufficient evidence at this stage in the pleadings that CHA Health was legally bound to Plaintiffs by CHA Fertility's contract and is a party that is responsible for the acts alleged in the Complaint.

**b. Count Five: Reckless and Wanton Misconduct.**

Count Five alleging reckless and wanton misconduct should not be dismissed because the facts alleged are clear that CHA Health engaged in reckless and wanton misconduct. CHA Health alleges that "plaintiffs do not allege facts describing CHA Health's alleged 'reckless business practices' and how CHA Health, in particular, harmed them through such alleged 'reckless business practices'. Def. Mot. p. 12. However, Plaintiffs are only required to plead a "short and plain statement of the claim…" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." Iqbal, 556 U.S. at 663 (quoting *Twombly,* 550 U.S. at 555.). Here, Plaintiffs have alleged sufficient facts to state a claim to relief that is plausible on its face. Plaintiffs have identified that CHA Health is responsible for the operation and management of CHA Fertility. See Compl., ¶ 35. Plaintiffs have further alleged that it was Defendant's reckless business practices that ultimately led to the incorrect embryo's being transferred to Plaintiff A.P. Id. at ¶¶ 169-70. Likewise, based on the evidence that Dr. Hong was an employee and agent of CHA Health, his actions flow to his employer. Thus, a reasonable inference can be drawn that Defendant CHA Health,

through its management and operation of CHA Fertility and Dr. Hong, was responsible for implementing and maintaining the reckless and wanton business practices that led to the improper transfer of embryos to Plaintiffs, and the subsequent loss of Plaintiffs' embryos. Accordingly, Defendant's Motion to Dismiss Count Five should be denied.

**c. Count Six: Breach of Contract**

Count Six should not be dismissed because CHA Health has materially breached its contract with Plaintiffs. The basic elements of a breach of contract requires proof of the following elements, "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Miles v. Deutsche Bank Nat'; Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015). Here, Plaintiffs have alleged the existence of a contract with Defendant. See Compl., ¶¶42-3. Further, Plaintiffs performed in accordance with their obligation under the contract to provide payment for IVF services while following the IVF Protocol. See Id. at ¶¶ 83-4; 93-94. Defendant subsequently breached the obligation to Plaintiffs when Defendant implanted the wrong embryos, resulting in a A.P.'s pregnancy with twins who were not biologically related to Plaintiffs or each other. Id. at ¶¶109-110.

However, CHA Health alleges through self-serving statements that there is no contract as between Plaintiffs and CHA Health. See Mot., p. 14. Yet, CHA Health obtained an express right and ability to access and use Plaintiffs' protected health

information for research and marketing purposes through the documents that form the IVF service contract between Plaintiffs and Defendants. Despite retaining the benefit of utilizing Plaintiffs' protected health information for research and marketing purposes, CHA Health now alleges that they are not party to any contract in order to avoid liability for their actions. CHA Health cannot simultaneously claim the benefits while avoiding the liabilities of their contracts. Accordingly, Defendant's Motion to Dismiss should be denied.

**d. Count Seven: Breach of The Duty of Good Faith and Fair Dealing**

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in contract performance and enforcement that neither party may do anything to deprive the other party of the benefits of the contract." *Luera v. BAC Home Loans Servicing, LP,* 221 Cal. App. 4th 49, 75 (2013). "This covenant 'required each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.'" *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co,* 723 F.2d 700 fn14. (9th Cir. 1984) (quoting *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal. 3d 809, 818 (1979).

Defendant relies on the previous arguments that the Breach of the Duty of Good Faith and Fair Dealing should be dismissed because Defendant is not party to the contract, however, as discussed above, Defendant is party to the contract or is otherwise accountable for its breach. Accordingly, Defendant's Motion to Dismiss Count Seven should be denied.

e. **Count Eight: Breach of Fiduciary Duty**

Count Eight should not be dismissed because Defendant maintained a position of trust and confidence with Plaintiffs during the IVF process, including the collection, storage, thawing, and implantation of embryos. In *Jameson v. Desta*, 215 Cal. App. 4th 1144 (2013), plaintiff alleged a breach of fiduciary duty when his physician prescribed him with the drug interferon. Plaintiff alleged that "Desta held a position of trust, causing [plaintiff] to rely on Desta's statements and recommendation that [plaintiff] begin treatment and stay on it." Id. at 1164. The Court held that Jameson's allegations adequately pled a claim for breach of fiduciary duty. Id. at 1165. Plaintiffs similarly allege the same set of facts that "Defendants were in a position of trust and confidence with respect to Plaintiffs' care. Plaintiffs knew little or nothing about IVF and, as a result, placed great reliance, faith and confidence in the advice and acts of Defendants." See Compl. ¶ 181. That reliance, faith, and confidence included CHA Health which was marketed to Plaintiffs as a "worldwide leader in reproductive medicine." Id. ¶¶ 60-9. As a result of the imbalance of knowledge and Defendants occupying a position of trust in which Plaintiffs relied upon, CHA Health is properly considered as a fiduciary. Accordingly, Plaintiffs have alleged a breach of fiduciary duty and Defendant's Motion to Dismiss Count Eight should be denied.

**f. Count Nine: New York Deceptive Trade Practices Act**

Plaintiffs' Complaint, originally filed in federal court in New York, sought to enforce the New York Deceptive Trade Practices Act against Defendants resulting from Defendants' conduct. To the extent that the Court determines that it is unable to enforce the New York Deceptive Trade Practices Act, Plaintiffs request that they be permitted to amend the complaint to plead Defendants' violations under the California Unfair Competition Law ("UCL") to establish to unlawful, unfair, and fraudulent business practices which led Defendants to fail to create, maintain, and supervise Plaintiffs' embryos at all relevant times when the embryos were within Defendants possession. Fed. R. Civ. P. 15. The facts that would sustain a UCL cause of action mirror those set forth in the complaint for deceptive trade practice and would of no surprise to Defendants to be asserted should California law apply.

**g. Count Thirteen: Bailment**

A bailment is the delivery of a thing in trust upon an implied or express contract. See *Greenberg Brothers, Inc., v. Ernest W. Hahn, Inc.*, 246 Cal. App. 2d 529, 531 (1966). Thus, the deposit of personal property to be cared for until the owner demands return constitutes bailment. Id. at 531. However, Defendant contends that Plaintiffs' cause of action for bailment should be dismissed based on an erroneous reading of *Moore v. Regents of University of California,* 51 Cal.3d 120, 142-147 (1990) for the proposition that human tissue is not property. However, multiple courts have since held that individuals have a property interest in their own

biological material that is being stored for later re-introduction to their own bodies. The Supreme Court decided *Moore* on the basis that the plaintiff had no ownership or right of possession over cells that had been excised and donated, used for research, or otherwise disposed of. Id. at 137. In *Moore,* the plaintiff had his spleen removed after being diagnosed with leukemia. Id. at 126. Doctors obtained samples of his blood and other biological materials, and used cells from those samples in connection with research that ultimately resulted in valuable patents. Id. Moore claimed a property interest in the products created from his biological material. Id. at 135. Critical to the Court's decision in *Moore* was that plaintiff did not have any expectation of continued ownership in those cells because he went to have them removed and would have no expected use for those diseased cells. *Moore,* 51 Cal 3d. at 137. To the contrary, Plaintiffs undoubtedly expected and paid to have their tissue used for their own medical and procreation purposes. The very reason for the use of the tissue was for implantation into A.P. to become pregnant. This is unconditionally distinguishable from *Moore.*

Moreover, *Moore* by its own terms "[did] not purport to hold that excised cells can never be property for any purpose whatsoever." Id. at 142. Other cases have recognized ownership of bodily material as personal property when it is stored for potential re-introduction to the individual's body. See *Hecht v. Superior Court,* 16 Cal. App. 4th 836, 846 n.4, 850 (1993) (holding that one's interest in his own stored sperm is "sufficient to constitute 'property'"); *Branzell v. Cal. Cryobank*, LLC, 480

F. Supp. 3d 1080, 1089 (C.D. Cal. 2020) (stating that "individuals have a property right in their sperm" and recognizing a claim for conversion of a sperm sample); *Robertson v. Saadat*, 48 Cal. App. 5th 630, 645 (2020) (reiterating property interest in sperm samples).

*Hecht* easily distinguished *Moore:* "[u]nlike the facts in *Moore,* a contract with the sperm bank purports to evidence decedent's intent and expectation that he would in fact retain control over the sperm following its deposit." *Hecht,* 16 Cal. App. 4th at p. 846 fn.4. Accordingly, Plaintiffs maintained a property right in the embryos which Defendants received and maintained control over until such time when Plaintiffs desired to utilize them. See Compl., ¶¶ 211-23. Defendant's Motion to Dismiss Count Thirteen should be denied.

**h. Count Fifteen: Conversion**

The tort of conversion in California comprises three elements "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Voris v. Lampert,* 7 Cal.5th 1141, 1150 (2019) (citing 5 Witkin, Summary of Cal. Law § 810 at p.1115 (11th ed. 2017). "Conversion is a strict liability tort. It does not require bad faith, knowledge, or even negligence; it requires only that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." *Voris v. Lampert,* 7 Cal.5th at 1158 (2019). However, Defendant's suggest that Plaintiffs' claim failed because there is no property interest to be

claimed in Plaintiffs' embryos under the *Moore* decision. Def. Mot., p. 18. Not so.

However, for the extensive reasons enumerated above, *Moore* is distinguishable from the facts at hand. Thus, Plaintiffs have a property interest in their embryos because they were being stored for potential reintroduction to Plaintiff A.P.'s body. See *Hecht*, 16 Cal. App. 4th at p. 846; See also Compl., ¶¶ 211-23. Accordingly, Defendant's Motion should be denied.

**i. Count Sixteen: Deceit and Fraudulent Concealment**

Fraudulent concealment requires "(1) concealment of a material fact; (2) a duty to disclose the fact; (3) intent to defraud; (4) the plaintiff was unaware of the fact and would have acted differently if plaintiff knew; and (5) resulting damage." Id. Generally, fraud claims are required to be plead with additional facts so as to apprise the defendant of the specific ground for the charge and to enable the court to determine the basis for the claims, however, "less specificity is required if the defendant would likely have greater knowledge of the facts than the plaintiff." *Cisco Sys., Inc., v. STMicroelectronics, Inc.*, 77 F.Supp. 3d 887, 897 (N.D. Cal. 2014) (citing *Chapman v. Skype, Inc.,* 220 Cal.App. 217, 230-1 (2013)).

Here, Plaintiffs have pled plausible claims of Deceit and Fraudulent Concealment with sufficient particularity in light of Defendant's greater knowledge with respect to the facts present. Defendant claims that Plaintiffs fail to specifically allege "who said what to whom, or when." Def. Mot, p. 22. However, Plaintiffs have alleged that Defendants misrepresented their ability to properly identify, store,

and transfer Plaintiffs' embryos to Plaintiff A.P. See Compl. ¶ 196. Defendant knew that the storage and labeling policies and procedures were insufficient to protect against the type of conduct that occurred in the instant case. Id. Moreover, by focusing on the specific speakers, Defendant attempts to shift focus from CHA Health's knowledge as the principal. This is especially pronounced where CHA Health unilaterally possesses the information about which of its specific personnel possessed this knowledge. See *Jones v. ConocoPhillips Co.*, 198 Cal App. 4th 1187, 1198-1200 (2011) (holding that plaintiffs need not allege specific knowledge of specific corporate employees when alleging a claim of fraudulent concealment against a corporate entity).

Further, Defendant's failure to disclose the inadequacies of the policies and procedures and affirmative misrepresentations that Defendants were experts in the field of fertility services are sufficient to plead Defendant's fraudulent intent. This is especially true because "fraud. . . is not generally practiced in open light of day," and for that reason is not susceptible of direct proof. *Vogelsang v. Wolpert,* 227 Cal. App. 2d 102, 111 (1964). Fraud often must be spelled out "by inference and by the circumstances surrounding the transaction, the relationship and interests of the parties. Id.

Plaintiffs' reliance is obvious and alleged clearly, in that Plaintiffs would not have entered into contract or undergone two IVF transfers had they been aware of the true nature of Defendant's methods, that ultimately led to the commingling of

embryos and transfer to Plaintiff A.P. See Compl., ¶ 209. Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. *Engalla v. Permanente Med. Grp., Inc.,* 15 Cal. 4th 951, 976-7 (1997). A misrepresentation is "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. Id. Here, a reasonable Plaintiff would attach paramount importance to knowing that Defendant could safely store his/her embryos without commingling them with others. See e.g. *Stevens v. Superior Court,* 180 Cal. App. 3d 605, 610 (noting that safety risks are material). Plaintiffs clearly relied on Defendant's fraudulent concealment of facts to their detriment. Accordingly, Count sixteen should not be dismissed.

## V. CONCLUSION

For the reasons set forth above, Defendant CHA Health's Motion to Dismiss should be overruled in its entirety. However, if the Court believes that any causes of action must be dismissed based on Defendant's Motion, Plaintiffs respectfully request leave to amend the Complaint in accordance with Fed. R. Civ. P. 15.

Dated: July 28, 2023 Frier Levitt, LLC

By: */s/ Michelle L. Greenberg*
Michelle L. Greenberg
Jonathan E. Levitt
Dae Y. Lee

Attorneys for Plaintiff, A.P. and Y.Z.

Dated: July 28, 2023

Peiffer Wolf Carr Kane Conway & Wise, LLP

By: *<u>/s/ Adam Wolf</u>*
Attorneys for Plaintiff, A.P. and Y.Z

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs A.P. and Y.Z. certifies that this brief contains 5328 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 28, 2023 Frier Levitt, LLC

By: /s/*Michelle L. Greenberg*
Michelle L. Greenberg
Attorneys for Plaintiff, A.P. and Y.Z.

CERTIFICATE OF SERVICE

STATE OF NEW JERSEY ]
] ss.
COUNTY OF MORRIS ]

I am employed by the law firm Frier Levitt, counsel for Plaintiffs. I am over the age of 18 and not a party to the within action; my business address is Frier Levitt, LLC, 84 Bloomfield Avenue, Pine Brook, New Jersey 07058. I am admitted Pro Hac Vice to this Court.

I hereby certify that on July 28, 2023, I caused all of the pages of the foregoing documents described as: Pleading Title to be electronically filed with the United States District Court, Central District of California by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system regarding the case of A.P. and Y.Z. v. CHA Health Systems, Inc., et al., Court Case No. 2:23-cv-01621-FLA-KES.

I declare under penalty of perjury under the law of the United States of America that I am employed by a member of the Bar of this Court and that the foregoing is true and correct.

Executed on July 28, 2023, in Pine Brook, New Jersey.

*/s/ Michelle L. Greenberg*
Michelle L. Greenberg